IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JOHN MAXWELL MONTIN, | ) | 4:08CV3083 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| CHRISTINE PETERSON, and BILL | ) | |
| GIBSON, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff filed his Complaint in this matter on April 21, 2008. (Filing No. 1.) Plaintiff has previously been given leave to proceed in forma pauperis. (Filing No. 6.) The court now conducts an initial review of the Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e) and 1915A.

**I. SUMMARY OF COMPLAINT**

Plaintiff filed his Complaint in this matter on April 21, 2008, against Nebraska Department of Health and Human Services Director Christine Peterson and Lincoln Regional Center CEO Bill Gibson. (Filing No. 1 at CM/ECF pp. 1-3.) Plaintiff has been housed at the Lincoln Regional Center ("LRC") since January 1993, pursuant to an Order of Commitment by the Hayes County, Nebraska District Court. (*Id.* at CM/ECF p. 4.) Plaintiff seeks relief against Defendants in both their individual and official capacities.[1] (*Id.* at CM/ECF pp. 1-3.)

---

[1]Plaintiff refers to "personal" and "professional" capacities. However, the court liberally construes those terms to mean "individual" and "official" capacities.

Condensed and summarized, Plaintiff alleges that he was originally housed on the "Security Ward 5" at the LRC but that he gradually received "increased levels of liberty" with the state court's permission. (*Id*. at CM/ECF p. 4.) Plaintiff was eventually moved to "Security Ward 2" and given a "liberty level" of "code-5." (*Id*.) Sometime thereafter, Plaintiff lost his code-4 and code-5 privileges and was "removed to a more restrictive setting . . . with a liberty level of code-3."[2] (*Id*.) A code-3 liberty level allowed Plaintiff to go "off-grounds without restraints while supervised by staff . . . ." (*Id*.)

In January 2008, while Plaintiff was on a code-3 community outing, another patient left the supervision of staff and was recovered several hours later. (*Id*.) Subsequently, Plaintiff was informed that he would no longer be allowed to exercise his code-3 liberties, which meant that he could no longer participate in community outings. (*Id*. at CM/ECF p. 5) Plaintiff alleges that Defendants removed his code-3 liberties because of "unofficial public complaints" about escaping mentally ill patients. (*Id*.) Plaintiff further alleges that he "violated no treatment limitations, rules, regulations, or policies to have his liberty . . . denied and removed" and that denial and removal constitutes punishment "without recourse." (*Id*. at CM/ECF p. 6.)

Plaintiff alleges that Defendants' permanent removal of his liberty privileges constitutes "deliberate indifference" and denial of his "due process" rights under the Nebraska Constitution, as well as "deliberate indifference" and denial of his "due process" and "equal protection" rights under the Fourteenth Amendment to the U.S. Constitution. (*Id*.) Plaintiff asks the court issue a declaratory judgment against Defendants, and an injunction ordering Defendants to restore Plaintiff's liberty privileges. Plaintiff also asks the court to award compensatory damages, punitive damages, and attorneys fees. (*Id*. at CM/ECF pp. 6-10.)

---

[2]Plaintiff's claims for the loss of his "code-4" and "code-5" liberties are addressed in Case Number 04:07cv3271. (Filing No. 1 at CM/ECF p. 6.)

## II.     APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. *See* 28 U.S.C. §§ 1915(e) and 1915A. The court must dismiss a complaint or any portion thereof that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A.

Therefore, where a pro se plaintiff does not set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible, their complaint must be dismissed" for failing to state a claim upon which relief can be granted. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007) (overruling *Conley v. Gibson,* 355 U.S. 41 (1967), and setting new standard for failure to state a claim upon which relief may be granted). Regardless of whether a plaintiff is represented or is appearing pro se, the plaintiff's complaint must allege specific facts sufficient to state a claim. *See Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985). However, a pro se plaintiff's allegations must be construed liberally. *Burke v. North Dakota Dep't of Corr. & Rehab.*, 294 F.3d 1043, 1043-1044 (8th Cir. 2002) (citations omitted).

Liberally construed, Plaintiff here alleges federal constitutional claims. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

## III.  DISCUSSION OF CLAIMS

 A.  Sovereign Immunity

The Eleventh Amendment bars claims for damages by private parties against a state, state instrumentalities and an employee of a state sued in the employee's official capacity. *See, e.g., Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 446-447 (8th Cir. 1995). Any award of retroactive monetary relief payable by the state, including for back pay or damages, is proscribed by the Eleventh Amendment absent a waiver of immunity by the state or an override of immunity by Congress. *See, e.g., Dover Elevator Co.*, 64 F.3d at 444; *Nevels v. Hanlon*, 656 F.2d 372, 77-378 (8th Cir. 1981). Sovereign immunity does not bar damages claims against state officials acting in their personal capacities, nor does it bar claims brought pursuant to 42 U.S.C. §1983 which seek equitable relief from state employee defendants acting in their official capacity.

In addition, a claim against an individual, in her official capacity, is in reality a claim against the entity which employs the official. *See Parrish v. Luckie*, 963 F.2d 201, 203 n.1 (8th Cir. 1992) ("Suits against persons in their official capacity are just another method of filing suit against the entity. . . . A plaintiff seeking damages in an official-capacity suit is seeking a judgment against the entity. . . . Therefore, the appellants in this case will collectively be referred to as the City.") (quotations omitted). *Accord Eagle v. Morgan*, 88 F.3d 620, 629 n. 5 (8th Cir. 1996) ("'[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.'") (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). As such, damages claims against individual state employees acting in their official capacities are also barred by the Eleventh Amendment. *Murphy v. State of Ark.*, 127 F.3d 750, 754 (8th Cir. 1997).

Here, Plaintiff seeks monetary relief against Defendants in their official capacities. (Filing No. 1 at CM/ECF pp. 1-3, 6-10.) As set forth above, Defendants are entitled to sovereign immunity for such claims. However, sovereign immunity does not bar claims for monetary relief against Defendants in their individual capacities, nor does it bar claims for injunctive relief against Defendants in their official capacities. In light of this, the claims against Defendants in their official capacities for monetary relief are dismissed.

### B. Plaintiff's Remaining Claims

Liberally construed, Plaintiff's claims are brought pursuant to the Fourteenth Amendment to the U.S. Constitution. Indeed, persons involuntarily civilly committed have liberty interests under the due process clause of the Fourteenth Amendment entitling them to safety, freedom from bodily restraint, and adequate care while in confinement. *Youngberg v. Romeo*, 457 U.S. 307 (1982). Such persons are "entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Id.* at 322. As set forth by the Eighth Circuit, where an individual is civilly committed to state custody, "his liberty interests are considerably less than those held by members of free society" but "as compared to a prison inmate," such individuals are entitled to "more considerate treatment and conditions of confinement." *Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006).

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Thus, claims regarding the right to either procedural or substantive due process must begin with identification of a protected liberty or property interest. *Singleton v. Cecil*, 176 F.3d 419, 424-25, 425 (8th Cir. 1999).

In order to constitute a liberty interest, an individual must have a legitimate claim or entitlement to the subject of the deprivation which rises to more than a unilateral hope, or expectation. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). A protected liberty interest may arise from either the Due Process Clause of the United States Constitution itself, or from a state-created statutory entitlement. *Hewitt v. Helms,* 459 U.S. 460, 466 (1983), overruled on other grounds by *Sandin v. Conner*, 515 U.S. 472, 479-83 (1995); *Fraise v. Terhune*, 283 F.3d 506, 522 (3d Cir. 2002) (citations omitted).

Here, Plaintiff alleges that he is an involuntarily committed individual in state custody, and that he was given code-3 liberties by a court order of the Hayes County, Nebraska District Court. Plaintiff also alleges that, through no fault of his own, Defendants enacted a new policy that stripped him of his code-3 liberties. As such, Plaintiff is no longer permitted to go "off-grounds" to participate in community outings. Liberally construed, Plaintiff has set forth enough facts to nudge his claims across the line from conceivable to plausible. As a result, Plaintiff's claims may proceed and he may serve Defendants with summons. However, the court cautions Plaintiff that this is only a preliminary determination based only on the allegations of the Complaint and is not a determination of the merits of Plaintiff's claims or potential defenses thereto.

IT IS THEREFORE ORDERED that:

1. Plaintiff's claims against Defendants in their official capacities for monetary relief are dismissed.

2. Plaintiff's claims against Defendants in their official capacities for injunctive relief, and against Defendants in their individual capacities, may proceed and service is now warranted.

3.  To obtain service of process on Defendants, Plaintiff must complete and return the summons forms which the Clerk of the court will provide. The Clerk of the court shall send FOUR (4) summons forms and FOUR (4) USM-285 forms (for service on each Defendant in both their individual and official capacities) to Plaintiff together with a copy of this Memorandum and Order. Plaintiff shall, as soon as possible, complete the forms and send the completed forms back to the Clerk of the court. In the absence of the forms, service of process cannot occur.

4.  Upon receipt of the completed forms, the Clerk of the court will sign the summons forms, to be forwarded with a copy of the Complaint to the U.S. Marshal for service of process. The Marshal shall serve the summons and Complaint without payment of costs or fees. Service may be by certified mail pursuant to Fed. R. Civ. P. 4 and Nebraska law in the discretion of the Marshal. The Clerk of the court will copy the Complaint, and Plaintiff does not need to do so.

5.  Fed. R. Civ. Pro. 4 requires service of the complaint on a defendant within 120 days of filing the complaint. However, because in this order Plaintiff is informed of these requirements for the first time, Plaintiff is granted, on the court's own motion, an extension of time until 120 days from the date of this order to complete service of process.

6.  Plaintiff is hereby notified that failure to obtain service of process on a defendant within 120 days of the date of this order may result in dismissal of this matter without further notice as to such defendant. A defendant has twenty (20) days after receipt of the summons to answer or otherwise respond to a complaint.

7.  The Clerk of Court is directed to set a pro se case management deadline in this case with the following text: "January 19, 2009: Check for completion of service of summons."

8. The parties are bound by the Federal Rules of Civil Procedure and by the Local Rules of this court. Plaintiff shall keep the court informed of his current address at all times while this case is pending. Failure to do so may result in dismissal.

October 1, 2008.                BY THE COURT:

                                *s/Richard G. Kopf*
                                United States District Judge