IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JOHN MAXWELL MONTIN, | ) | 4:08CV3083 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| CHRISTINE PETERSON, and BILL | ) | |
| GIBSON, | ) | |
| | ) | |
| Defendants. | ) | |

    This matter is before the court on Plaintiff John Maxwell Montin's Motion to for Summary Judgment. (Filing No. 16.) As set forth below, the Motion is denied, and the court finds that Defendants, Christine Peterson and Bill Gibson, are entitled to qualified immunity.

## I. BACKGROUND

    Plaintiff filed his Complaint in this matter on April 21, 2008. (Filing No. 1.) On October 1, 2008, the court conducted an initial review of Plaintiff's Complaint. (Filing No. 7.) On initial review, the court dismissed Plaintiff's claims against Defendants in their official capacities for monetary relief, but permitted Plaintiff's claims to proceed against Defendants in their individual capacities and their official capacities for injunctive relief. (*Id*.) After being served, Defendants filed an Answer on November 21, 2008. (Filing No. 15.) Shortly thereafter, Plaintiff filed a Motion for Summary Judgment. (Filing No. 16.) Along with his Motion, Plaintiff filed an Affidavit in Support, a Brief in Support and a Statement of Undisputed Facts. (Filing Nos. 17, 18 and 19.) On December 22, 2008, Defendants filed a Brief in Opposition to Plaintiff's Motion along with an Index of Evidence. (Filing Nos. 21 and 22.) Plaintiff responded to Defendant's Brief in Opposition by filing a Reply Brief. (Filing No. 23.)

The party seeking the entry of summary judgment in its favor must set forth "a separate statement of material facts as to which the moving party contends there is no genuine issue to be tried and that entitle the moving party to judgment as a matter of law." NECivR 56.1(a)(1). If the non-moving party opposes the motion, that party must "include in its [opposing] brief a concise response to the moving party's statement of material facts." NECivR 56.1(b)(1). Such response must "address each numbered paragraph in the movant's statement" of facts and must contain pinpoint citations supporting the opposition. *Id.* "Properly referenced material facts in the movant's statement will be deemed admitted unless controverted by the opposing party's response." *Id.*

The court has carefully reviewed the documents submitted by the parties. Plaintiff has submitted a statement of material facts in accordance with the court's Local Rules. Defendants have submitted a "concise response" to those facts. Further, Defendants submitted evidence properly authenticated by affidavit. Plaintiff has not. In light of this, the court adopts the following undisputed material facts.

## II. RELEVANT UNDISPUTED MATERIAL FACTS

1. Plaintiff was admitted to the Lincoln Regional Center ("LRC") as a patient on August 13, 1993, and has resided there ever since.

2. In March 1994, Plaintiff earned Code 3 privileges which permitted him to participate in community outings.

3. In January 2008, a patient eloped from a community outing without the permission or knowledge of accompanying staff.

    4.    Because of the elopement, Code 3 privileges were immediately suspended for all LRC patients.

    5.    After this immediate suspension, Defendants, among others, made facility-wide policy adjustments to LRC patient privileges. These policy adjustments were made in the interest of public safety.

    6.    The policy adjustments were not made because of a specific wrongdoing or violation by Plaintiff, but were effectuated because of the patient elopement in January 2008.

    7.    Under the new policies, Code 3 privileges are only available to patients whose discharge is to occur in the near future.

(Filing No. 15 at CM/ECF pp. 1-3; Filing No. 21 at CM/ECF p. 1; Filing No. 22-2, Attach. 1 at CM/ECF pp. 1-6; Filing No. 22-6, Attach. 5 at CM/ECF p. 2.)

### III.    ANALYSIS

#### A.    Standard of Review

Summary judgment should be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56©. *See also Egan v. Wells Fargo Alarm Servs.*, 23 F.3d 1444, 1446 (8th Cir. 1994). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue. *Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999). In passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion. *Dancy v. Hyster Co.*, 127 F.3d 649, 652 (8th Cir. 1997).

In order to withstand a motion for summary judgment, the nonmoving party must substantiate the allegations with "'sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy.'" *Moody v. St. Charles County*, 23 F.3d 1410, 1412 (8th Cir. 1994) (quoting *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992)). "A mere scintilla of evidence is insufficient to avoid summary judgment." *Id.* Essentially the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

### B. Plaintiff's Motion

Plaintiff argues that Defendants violated his Fourteenth Amendment Due Process rights when they removed his Code 3 privileges without a hearing. (Filing No. 18 at CM/ECF p. 1.) He also argues that Defendants have no authority remove the Code 3 privilege because the removal places him in a more restrictive treatment environment. (*Id*. at CM/ECF p. 5.) Overall, Plaintiff argues that he is entitled to summary judgment because Defendants do not dispute that they removed his Code 3 privileges.

Although the material facts are not in dispute, Defendants argue that Plaintiff has failed to show that he is entitled to judgment as a matter of law. (Filing No. 21 at CM/ECF pp. 2-6.) In addition, Defendants argue that they are entitled to qualified immunity. (*Id*. at CM/ECF pp. 4-5.) The court agrees with Defendants.

### 1. Legal Standards for Qualified Immunity

Qualified immunity is a question of law to be determined by the court and should ordinarily be decided long before trial. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991). "Public officials, of course, are entitled to qualified immunity from liability

for damages under 42 U.S.C. § 1983 if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Domina v. Van Pelt*, 235 F.3d 1091, 1096 (8th Cir. 2000) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In short, "qualified immunity shields a defendant from suit if he or she could have reasonably believed his or her conduct to be lawful in light of clearly established law and the information [that the defendant] possessed." *Smithson v. Aldrich*, 235 F.3d 1058, 1061 (8th Cir. 2000) (citations and quotations omitted). "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Id.* (citations and quotations omitted). Moreover, qualified immunity is "the usual rule" and state actors will enjoy qualified immunity in all but "exceptional cases." *Foy v. Holston*, 94 F.3d 1528, 1532 (11th Cir. 1996).

The court focuses on two questions to determine whether a state official is entitled to qualified immunity: "(1) whether, after viewing the facts in the light most favorable to the party asserting the injury, there was a deprivation of a constitutional or statutory right; and, if so, (2) whether the right was clearly established at the time of the deprivation such that a reasonable official would understand that their conduct was unlawful . . . ." *Henderson v. Munn,* 439 F.3d 497, 501 (8th Cir. 2006) (citations and quotations omitted). Thus, the "initial inquiry is whether the facts as alleged show that the officers' conduct violated a constitutional right. . . . If the facts do not show a violation, [a court] need not proceed further with the qualified immunity analysis." *Brockinton v. City of Sherwood*, 503 F.3d 667, 672 (8th Cir. 2007).

     2.    Deprivation of a Constitutional Right

Liberally construed, Plaintiff's claims are brought pursuant to the Fourteenth Amendment to the U.S. Constitution. "The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests

is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Thus, claims regarding the right to either procedural or substantive due process must begin with identification of a protected liberty or property interest. *Singleton v. Cecil*, 176 F.3d 419, 424-25, 425 (8th Cir. 1999).

In order to constitute a liberty interest, an individual must have a legitimate claim or entitlement to the subject of the deprivation which rises to more than a unilateral hope or expectation. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). A protected liberty interest may arise from either the Due Process Clause of the United States Constitution itself, or from a state-created statutory entitlement. *Hewitt v. Helms,* 459 U.S. 460, 466 (1983), *overruled on other grounds by Sandin v. Conner*, 515 U.S. 472, 479-83 (1995); *Fraise v. Terhune*, 283 F.3d 506, 522 (3d Cir. 2002) (citations omitted).

Although restrictions on an involuntarily civilly committed individual's liberty must be reasonably related to legitimate government objectives, states "enjoy wide latitude in developing treatment regimens" for mental patients. *Kansas v. Hendricks*, 521 U.S. 346, 368 n.4 (1997); *Youngberg v. Romeo*, 457 U.S. 307, 320 (1982). The professionals who provide care and treatment for civilly committed individuals do not have to employ the best possible alternative or use the least restrictive means available. *See Collignon v. Milwaukee County*, 163 F.3d 982, 990 (7th Cir. 1998) (finding that a disagreement about which of many professionally acceptable treatment plans should have been implemented does not make out a substantive due process claim). In fact, "a decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Youngberg,* 457 U.S. at 323.

Here, Plaintiff did not conduct any discovery or direct the court to any case law to show that Defendant's removal of his Code 3 privileges deprived him of a constitutional right or was a substantial departure from accepted professional judgment. Plaintiff only directs the court to Neb. Rev. Stat. § 29-3701, to argue that Defendants do not have the authority to establish new policies that affect his conditions of confinement. (Filing No.18 at CM/ECF pp. 4-5; Filing No. 23 at CM/ECF p. 3.) Plaintiff's argument is unpersuasive. Section 29-3701 does not prohibit Defendants from establishing new policies. Rather, it establishes the statutory procedures that Nebraska courts follow after receiving a verdict of acquittal on grounds of insanity. Neb. Rev. Stat. § 29-3701.

In contrast, Defendants have submitted sworn affidavits showing that the removal of Plaintiff's Code 3 privileges was related to facility-wide policy adjustments enacted in response to the January 2008 patient elopement. These policy changes were enacted in the interest of public safety and were applied to all LRC patients, not just Plaintiff. Under these new policies, LRC patients can obtain Code 3 privileges when their discharge is to occur in the near future. (Filing No. 22-6, Attach 5 at CM/ECF p. 2.).

The Supreme Court has cautioned courts against substituting their judgment for that of correction officials charged with maintaining institutional order and security. *Bell v. Wolfish*, 441 U.S. 520, 547-48 (1979). Defendants here have shown that the policy adjustments that Plaintiff complains of were enacted in the interest of public safety. Further, nothing in the record suggests that the enactment of these facility-wide policy adjustments was a substantial departure from accepted professional judgment, practice, or standards. In light of these findings, Plaintiff has not established that Defendants violated a constitutional right and there is no need to proceed further. Defendants are entitled to qualified immunity.

### C.  Sua Sponte Summary Judgment

The purpose behind Rule 56 is to promptly dispose of actions in which there are no genuine issues of material fact. Fed. R. Civ. Pro. 56 advisory committee's notes. "In order to achieve this goal, the rule thus requires a court, under the proper conditions, to grant the relief to which a party is entitled even if the party has not demanded such relief." *Exxon Corp. v. St. Paul Fire & Marine Ins. Co.*, 129 F.3d 781, 786 (5th Cir. 1997). "District courts are widely acknowledged to possess the power to enter summary judgment sua sponte." *First Fin. Ins. Co. v. Allstate Interior Demolition Corp.*, 193 F.3d 109, 114 (2d Cir. 1999). A court may grant summary judgment in favor of the nonmoving party provided the party has had a "full and fair opportunity to meet the proposition that there is no genuine issue of material fact to be tried." *First Fin. Ins. Co.*, 193 F.3d at 115; *see also Hubbard v. Parker,* 994 F.2d 529, 531 (8th Cir. 1993) (a district court may grant summary judgment sua sponte under Fed. R. Civ. Pro. 56 as long as the party against whom the judgment is entered is given sufficient advance notice and an adequate opportunity to show why summary judgment should not be granted).

Here, Plaintiff had the opportunity to fully present evidence of his claims and even filed a Reply Brief in response to Defendants' Brief in Opposition to his Motion for Summary Judgment. Because there is no genuine issue of material fact, the court finds that Defendants are entitled to qualified immunity as a matter of law. Thus, summary judgment is appropriate in favor of Defendants. However, the court will withhold judgment for 30 days to provide Plaintiff with the opportunity to supplement the record with information that might create an issue of material fact. If Plaintiff fails to supplement the record, in accordance with this Memorandum and Order, summary judgment will be entered in favor of Defendants.

IT IS THEREFORE ORDERED that:

1. Plaintiff's Motion for Summary Judgment (filing no. 16) is denied.

2. Plaintiff shall have until **July 22, 2009**, to supplement the record with information that might create an issue of material fact, in accordance with this Memorandum and Order. In the event that Plaintiff chooses to supplement the record, he shall address why the court should not grant summary judgment in favor of Defendants.

3. The Clerk of the court is directed to set a pro se case management deadline with the following text: July 22, 2009: Deadline for Plaintiff to supplement the record in response to the court's June 22 Memorandum and Order.

June 22, 2009.                         BY THE COURT:

                                                  *s/Richard G. Kopf*
                                                  United States District Judge